In The United States District Court For The District Of South Carolina

Robert Louis Garrett Jr.,  )
      Plaintiff,  )    Civil Action No.
                    )
    v.               )
                    )
The Current Director Of The  )
South Carolina Department Of  )
Corrections, Bryan P. Stirling,  )
Bernard McKie, Franklin Richard-  )    Initial
-son, Donald Lane, et. Al.,  )    Complaint

## I. Jurisdiction And Venue

1. This is a civil action authorized by 42 U.S.C. Section 1983 to redress the deprivation, under color of state law, of rights secured by the Constitution of the United States. The Court has jurisdiction under 28 U.S.C. Section 1331 and 1343(A)(3). Plaintiff seeks declaratory relief pursuant to 28 U.S.C. Section 2201 and 2202. Plaintiff's claims for injunction/injunctive relief are authorized by U.S.C. Section 2283 and 2284, and Rule 65 of the Federal Rules of Civil Procedure.

2. The United States District Court of South Carolina is an appropriate venue under 28 U.S.C. Section 1391(b)(2) because it is where the events giving rise to this claim occurred.

## II. Plaintiff

3. Plaintiff, Robert Louis Garrett Jr., is and was at all times mentioned herein a prisoner of the State of South Carolina, in the custody of the South Carolina Department of Corrections. He is currently confined at Allendale Correctional Institution (Fairfax, South Carolina), in a Mental Health Program called the Lower Level Behavior Management Unit (LLBMU).

## III. Defendants

4. Defendant, Bryan P. Stirling, is the Director of the South Carolina Department of Corrections (SCDC). He is legally responsible for the overall operation of SCDC, and each Institution under it's jurisdiction, including Allendale Correctional Institution.

5. Defendant, Bernard McKie, is/was the Deputy Director of SCDC, and for a brief period the Intern Warden at Broad River CI. He is/was legally responsible for the operations of institutions throughout the state, as well as the overall welfare of all the prisoners in those institutions.

4. Defendant, Franklin Richardson, is/was the Captain/Unit Manager at Lee CI at all times mentioned in this Complaint.

5. Defendant, Donald Lane, is/was an Agent of SCDC's Office Of Inspector General, Police Services at all times mentioned in this Complaint until his "retirement".

6. Defendant, Randall Fowler Jr., is a Correctional Officer for SCDC, assigned to Perry CI at all times mentioned in this Complaint.

7. Defendant, James Parrish, is/was a Major for SCDC, assigned to Broad River at all times mentioned in this Complaint.

8. Defendant, Lefford Fate, is/was the Deputy Director of SCDC, and he is/was legally responsible for the operations of institutions throughout the state, as well as the overall welfare of all the prisoners in those institutions.

9. Defendant, S. Soltis, is/was the Deputy Director of SCDC, and he is/was legally responsible for the operations of institutions throughout the state, as well as the overall welfare of all the prisoners in those institutions.

10. Defendant, Dr. Koon, is a Orthopedic Doctor at SCDC's Orthopedic Clinic, and he is/was responsible for the orthopedic needs of all prisoners throughout SCDC at all times mentioned in this Complaint.

11. Defendant, Dr. Arrojas is a Orthopedic Doctor at SCDC's Orthopedic Clinic, and he is/was responsible for the orthopedic needs of all prisoners throughout SCDC at all times mentioned in this Complaint.

12. Defendant, Dr. T. Ergen, is a Orthopedic Doctor at SCDC's Orthopedic Clinic, and he is/was responsible for the orthopedic needs of all prisoners throughout SCDC at all times mentioned in this Complaint.

13. Defendant, Dr. Kocher, is a Ophthalmology Doctor at SCDC's Ophthalmology Clinic, and he is/was responsible for the ophthalmology needs of all prisoners throughout SCDC at all times mentioned in this Complaint.

14. Defendant, Dr. Sridaran, is a psychiatrist for SCDC, and he is responsible for the mental health needs of prisoners throughout SCDC.

15. Defendant, Cecilia Reynolds, is/was the Warden at Lee CI, and she is/was legally responsible for the operations of Lee CI, as well as for the overall welfare of all the prisoners in that prison at all times mentioned in this Complaint.

16. Defendant, Lawy Cartledge, is/was the Warden at Perry CI and Broad River CI, and he is/was legally responsible for the operations of both institutions, as well as for the overall welfare of all the prisoners at those prisons at all times mentioned in this Complaint.

17. Defendant, Leroy Cartledge, is/was the Warden at McCormick CI, and he is/was legally responsible for the operations of McCormick CI, as well as for the overall welfare of all the prisoners in that prison at all times mentioned in this Complaint.

18. Defendant, James Parker, is/was the PREA Compliance Manager at McCormick CI, and he is/was legally responsible for all of the PREA concerns at that facility at all times mentioned in this Complaint.

19. Defendant, Dr. B. Lewis, is/was the general physician at McCormick CI, and was legally responsible for all of the health/medical needs of the prisoners at that facility

at all times mentioned in this Complaint.

20. Defendant, Dr. A. Compton, is/was the general physician at Lee CI, and was legally responsible for all of the health/medical needs of the prisoners at that facility at all times mentioned in this Complaint.

21. Defendant, Dr. Bryne, is/was the general physician at Allendale CI, and was legally responsible for all of the health/medical needs of the prisoners at that facility at all times mentioned in this Complaint.

22. Defendant, Sharon Patterson, is/was the DHO at Lee CI, and was legally responsible for holding fair, unbiased disciplinary hearings at that facility at all times mentioned in this Complaint.

23. Defendant, Kennard Dubose, is/was the Director of Mental Health for SCDC, and he is/was legally responsible for the mental health operations of prisons throughout SCDC at all times mentioned in this Complaint.

24. Defendant, Ann Hallman, is/was the Chief at SCDC's Inmate Grievance Branch, and she is/was legally responsible for all grievances filed by prisoners in SCDC at all times mentioned in this Complaint.

25. Defendant, C. Hindenburg, is/was the Inmate Grievance Coordinator at Perry CI, and was legally responsible for processing grievances at that facility at all times mentioned in this Complaint.

26. Defendant, K. Rivers, is/was the Inmate Grievance Coordinator at Lee CI, and was legally responsible for processing grievances at that facility at all times mentioned in this Complaint.

27. Defendant, P. Talbert, is/was the Inmate Grievance Coordinator at McCormick CI, and was legally responsible for processing grievances at that facility at all times mentioned in this Complaint.

28. Defendant, Barns, is/was the Inmate Grievance Coordinator at Broad River CI, and was legally responsible for processing grievances at that facility at all times mentioned in this Complaint.

29. Defendant, Curtis Earley, is/was the Major at Perry CI, and was responsible for the overall security of that facility at the times mentioned in this complaint.

30. Defendant, Florence Mauney, is/was the Associate Warden at Perry CI, and was legally responsible for the overall security of that facility at the times mentioned in this Complaint.

31. Defendant, Amy Enloe, is/was the Nurse Practitioner at Perry CI, and was legally responsible for the health/medical needs of prisoners at that facility at all times mentioned in this Complaint.

32. Defendant, June 2015 PREA Compliance Manager, is/was legally responsible for all of the PREA concerns at that facility at all times mentioned in this Complaint.

33. Defendant, Lasley, is/was a Captain at Perry CI, and was responsible for the overall security of that facility at the times mentioned in this complaint.

34. Defendant, Williams, is/was a Captain at Perry CI, and was responsible for the overall security of that facility at the times mentioned in this Complaint.

35. Defendant, DeGeorgis, is/was a Captain at Perry CI, and was responsible for the overall security of that facility at the times mentioned in this Complaint.

36. Defendant, Wantonta Golden, is/was a Captain at Perry CI, and was responsible for the overall security of that facility at the times mentioned in this Complaint.

37. Defendant, Lindsey Harris, is/was a Registered Nurse at Perry CI, and was responsible for the health/medical needs of prisoners at that facility at the times mentioned in this Complaint.

38. Defendant, Jeff Bilyeu, is/was a Sergeant at Perry CI, and was responsible for certain security and operations of the facility at the times mentioned in this Complaint.

39. Defendant, Meagan Harris, is/was a Mental Health Counselor at Perry CI, and was responsible for the mental health needs of prisoners at that facility at the times mentioned in this Complaint.

40. Defendant, Katherine Burgess, is/was a Registered Nurse at Perry CI, and was responsible for the health/medical needs of prisoners at that facility at the times mentioned in this Complaint.

41. Defendant, R. Blackburn, is/was a Lieutenant at Perry CI, and was responsible for certain security and operations of the facility at the times mentioned in this Complaint.

42. Defendant, Chad Binkley, is/was a Correctional Officer for SCDC, assigned to Perry CI at all times mentioned in this Complaint.

43. Defendant, Kenneth Myers, is/was a Sergeant at Perry CI, and was responsible for certain security and operations of the facility at the times mentioned in this Complaint.

44. Defendant, James Jennings, is/was a Correctional Officer for SCDC, assigned to Perry CI at all times mentioned in this Complaint.

45. Defendant, Nathan Rice, is/was a Correctional Officer for SCDC, assigned to Perry CI at all times mentioned in this Complaint.

46. Defendant, Aull, is/was a Lieutenant at Broad River CI, and was responsible for certain security and operations of the facility at the times mentioned in this Complaint.

47. Defendant, Beckett Jr., is/was a Lieutenant at Broad River CI, and was responsible for certain security and operations of the facility at the times mentioned in this Complaint.

48. Defendant, T. Esterline, is/was a Sergeant at Broad River CI, and was responsible for certain security and operations of the facility at the times mentioned in this Complaint.

49. Defendant, B. Roberts, is/was a Correctional Officer for SCDC, assigned to Broad River CI at all times mentioned in this Complaint.

50. Defendant, Rogers, is/was a Captain/Unit Manager at Lee CI, and is responsible for the overall security of that facility at the times mentioned in this Complaint.

51. Defendant, McBride, is/was a Sergeant at Lee CI, and was responsible for certain security and operations of the facility at the times mentioned in this Complaint.

52. Defendant, Stephon, is/was the Associate Warden at Broad River CI, and is/was legally responsible for the overall security and operations of that facility at all times mentioned in this Complaint.

53. Defendant, Gina Williamson, is/was a Registered Nurse at Lee CI, and was responsible for the health/medical needs of prisoners at that facility at all times mentioned in this Complaint.

54. Defendant, Washington, is/was the Associate Warden at Broad River CI, and is/was legally responsible for the overall security and operations of that facility at all times mentioned in this Complaint.

55. Defendant, Olds, is/was a Registered Nurse at Broad River CI, and was responsible for the health/medical needs of prisoners at that facility at all times mentioned in this Complaint.

56. Defendant, Stephanie McMillan, is/was a Mental Health Counselor at Broad River CI, and was responsible for the mental health needs of prisoners at that facility at all times mentioned in this Complaint.

57. Defendant, Pamela Derrick, is a Nurse Administrator at Allendale CI, and is responsible for the medical/health needs of prisoners at that facility at all times mentioned in this Complaint.

58. Defendant, Myecha L. Miley, is a Mental Health Counselor at Allendale CI, and is responsible for the mental health needs of prisoners at that facility at all times mentioned in this Complaint.

59. Defendant, Brown, was a Mental Health Counselor at Allendale CI, and was responsible for the mental health needs of prisoners at that facility at all times mentioned in this Complaint.

60. Defendant, Sharp, is/was the PREA Compliance Manager at Lee CI, and is/was responsible for all of the PREA concerns at that facility at all times mentioned in this Complaint.

61. Defendant, Michelle Fox, is/was a Mental Health Counselor at Lee CI, and is/was responsible for the mental health needs of prisoners at that facility at all times mentioned in this Complaint.

62. Defendant, Beverly Wood, is/was a psychiatrist for SCDC, and she is responsible for the mental health needs of prisoners throughout SCDC.

63. Defendant, V. Grubbs, is the PREA Compliance Manager at Allendale CI, and is legally responsible for all of the PREA concerns at that facility at all times mentioned in this Complaint.

64. Defendant, Lawy Morris, is the Major at Allendale CI, and is legally responsible for security and operations at that facility at all times mentioned in this Complaint.

65. Defendant, M. Newton, is the Associate Warden at Allendale CI, and is legally responsible for security and operations at that facility at all times mentioned in this Complaint.

66. Defendant, John Pate, is the Warden at Allendale CI, and is legally responsible for the overall operations and welfare of all prisoners at that facility at all times mentioned in this Complaint.

67. Defendant, Michael McCall, is the Deputy Director for SCDC, and is legally responsible for the operations of institutions throughout the state, as well as the overall welfare of all the prisoners in those institutions.

68. Defendant, Cassandra Means, is a Doctor and Mental Health Administrator for SCDC, and is responsible for the mental health needs of prisoners throughout the state at all times mentioned in this Complaint.

69. Defendant, Ashley Maddox, is/was a Mental Health Counselor at McCormick CI, and is/was responsible for the mental health needs of prisoners at that facility at all times mentioned in this Complaint.

70. Defendant, Wilkens-Smith, is the Associate Warden at Allendale CI, and is legally responsible for security and operations at that facility at all times mentioned in this Complaint.

71. Defendant, McCoulough, is/was a Captain/Unit Manager at Lee CI, and is responsible for security and operations at that facility at all times mentioned in this Complaint.

72. Defendant, Willie Davis, is/was the Associate Warden at Lee CI, and is/was legally responsible for security and operations at that facility at all times mentioned in this Complaint.

73. Defendant, Katora Gause, is/was the SCDC Administrator for SCDC, and is/was legally responsible for the overall security and operations of prisons throughout the state at all times mentioned in this Complaint.

74. Defendant, Bernadette Jefferson, is/was the Major at Lee CI, and is/was legally responsible for the overall security and operations of that facility at all times mentioned in this Complaint.

75. Each defendant is sued in his or her individual capacity, and in his or her official capacity. At all times mentioned in this Complaint each Defendant acted UNDER THE COLOR OF STATE LAW.

### IV. Facts

76. At present Plaintiff's hand is in a great deal of pain from writing this Complaint, and he ask that it be duly noted that he is an American with a

Disability (As he only has limited and partial use of his right hand, he has a rare eye disease called sarcoidosis in both eyes, and he has been diagnosed with an assortment of mental illnesses by Clinical Psychiatrists).

77. Plaintiff has been subjected to various types and degrees of cruel and unusual punishment in the last few years, but the major instances for this Complaint was back on 9 May 2015 when he was unjustly sprayed with a very large quantity of MK-9 mace for sadistic and malicious reasons....... Back on 20 June 2015 when he was again unjustly sprayed with a very large quantity of MK-9 mace for sadistic and malicious reasons, and then during the attack disguised as a SCDC Policy Approved Use Of Force Plaintiff was physically and SEXUALLY assaulted........ And the last major instance was back on 25 May 2016 when a RACIST Major sadisticly attacked Plaintiff behind a locked door on RHU/lock up with some type of shield with a rod and hook attached to it, and he ended up ripping Plaintiff's right hand open VERY badly (Severing tendons, nerves, etc. and requiring MAJOR reconstructive surgery).

78. Having to relive these moments (Especially the sexual assault) has Plaintiff shedding tears, but he will try to detach himself from what happened and try to coherently relay the facts about each instance.

79. At trial, testimony and Plaintiff's SCDC Files (RTSM's, Grievances, Warden Jacket, etc.) will show that Plaintiff entered SCDC as a Mental Health patient as a result of being subjected to cruel and unusual punishment that he was subjected to while in the county jail he was in for 5½ years before coming to SCDC (See Exhibits 1A-3A)

80. That case was settled out of court, but because the South Carolina Department of Correction's Mental Health Program was/is severely inadequate, Plaintiff was exposed to a number of long stays on RHU after getting into physical altercations with SCDC officers.

81. During that time Plaintiff's Impulsive Explosive Disorder got worse and worse, and because of his SchizoAffective Disorder he had numerous cases where he felt that EVERYONE on this planet was against him.

82. These disorders WORSENED when in 2007 Plaintiff started having problems with his eyes, and eventually woke up one morning not being able to see anything out of his left eye........ Then the Absolute worse, when he woke up one morning at Kirkland CI not being able to see anything out of either of his eyes.

83. For someone who already had serious mental illnesses to go blind is like comparing a grain of sand to all the sand on this planet. Suicidal and homicidal thoughts became an every day, all day hell on earth, wherein Plaintiff became very reclusive and even more prone to violence for the least of offenses.

84. Plaintiff is giving this background information so that the Court will clearly see during it's "screening" process that because of SCDC's broken and severely flawed Mental Health Program, Plaintiff's illnesses got worse, and the deficientcy repeatedly exposed him to human suffering because use of force was substituted for mental health care/treatment.

85. Fast forward a bit, and finally Eye Specialist were able to restore my eye sight in both eyes, but SCDC's Mental Health Program did nothing but attempt to keep Plaintiff medicated.

86. Finally Plaintiff was transferred to Lee CI back in January 2009, after sitting on RHU/lockup for getting into a physical altercation with a Captain at Lieber CI (as well as their 1st and 2nd Responders Teams).

87. The dorm Plaintiff was placed in (Darlington, F4) was a high alfa dorm, and the very day Plaintiff arrived the said dorm was coming off of lockdown for a resident getting murdered.

88. Plaintiff participated in the Mental Health Program at Lee CI, and after securing a job working in the Maintenance Department, Plaintiff stopped taking his medication so the Mental Health Program dropped him from their caseload.

89. During his years at Lee CI Plaintiff got into a number of retaliation campaigns with staff there, but he was able to refrain from getting into any serious physical altercations because he knew a number of officers from society... ....And they were thus always close at hand if a situation got even remotely close to becoming physical.

90. When SCDC gave everyone all of their privileges back, Plaintiff received alot of visits from his family and friends, but when they were unjustly stripped from Plaintiff (for charges he eventually got overturned on Step 1 Grievances)....... Plaintiff honestly went back to a dark place thinking-wise, and his "Negative" voices seemed to dominate my every actions. It's as if I lost all hope, and if I couldn't see and talk to my family ....... I really had no desire to stay on this planet.

91. During this time Lee CI staff attempted to put me on RHU/lockup, but I refused and let them know that I would defend myself if they tried .... .... And though there were those who wanted to group up and drag me to RHU, those few officers that I knew from society were able to keep them at bay.

92. On 13 April 2015 Plaintiff attempted to save/rescue another resident from going to RHU, but he ended up getting into a verbal altercation with Sgt. McBride, 1st Responders was called, and Lt. Gooden took Plaintiff up front to Operations to in his words "cool down a little bit".

93. That ended up being a trick to get Plaintiff in a secluded area with no eyes/ witnesses around.

94. Sgt. McBride, Captain Richardson and Captain Rogers approached Plaintiff in the Operations Holding Cell and told him that he had to go to RHU for his comments to Sgt. McBride. Plaintiff refused and told them that they'd have to drag him up there.

95. Captain Richardson is one of the staff members Plaintiff knows from society, because they went to rival high schools (Sumter High and Hillcrest High).

It may seem trivial or mundane, but in 1993 Plaintiff played on the team that handed Captain Richardson and his team their WORST EVER defeat (34-0), and for that reason alone Captain Richardson and Plaintiff never got along.

96. On the day in question he saw an oppurtunity to lash out at Plaintiff, so him, Lt. Goodman, CO Hastie, Captain Rogers and two other officers Plaintiff didn't know openned the Holding Cell door (which was against Policy because Plaintiff was not handcuffed). Captain Richardson had the rubber bullet gun, Captain Rogers had the big cannister of mace (Bigger than MK-9) and they sur-rounded Plaintiff and told him that he was going to RHU one way or another.

97. Plaintiff looked at the guy holding the camera and said that if any of them touched him, shot him with rubber bullets or mace, etc. he would defend himself, and after a 5-10 minute back and forth conversation with them trying to intimi--date me to be handcuffed and go to RHU....... Captain Richardson finally said for all of them to leave so they could come back and do it the "right" way.

98. Plaintiff thought they meant lock the door back, give Plaintiff directives and when he refused use MK-9 a few times, and eventually do a Use Of Force........ But Lt. Goodman came back alone and told Plaintiff that they were letting him go back to Chesterfield, to stay away from Sgt. McBride and don't say any--thing to him, and the entire incident would be "Water Under The Bridge".

99. Plaintiff asked Lt. Goodman if that was his word TWICE, and both times he said yes so Plaintiff agreed to be handcuffed and led back to what he thought was his dorm in General Population. However once handcuffed and with the door openned, Captain Richardson and others swarmed Plaintiff and Plaintiff resisted and fought all of them IN HANDCUFFS for about ten minutes off and on.

100. During the struggle Captain Richardson was taunting Plaintiff while one Offi--cer choked him and another two held him down doing leg locks and pressure points on him, and finally Plaintiff stopped resisting and said just take him to RHU.

101. Plaintiff filed Emergency Grievances and RTSM's about the incident, and ultimately to try to make the situation go away the decision was made to transfer Plaintiff.

102. On the night of 4 May 2015 a former officer from Lee CI snuck and told Plaintiff that he was getting transferred the next day, and to believe nothing I was told about a medical run.

103. That night Plaintiff secured weapons and was ready to make the staff drag him to the transport vehicle, but Associate Warden Willie Davis and Major Berna--dette Jefferson came to his cell door and told him he was going to General Population at Perry so he need to pack and get ready. Plaintiff agreed because of the two people telling him, but that turned out to be a lie because as soon as he arrived at Perry CI he was taken DIRECTLY to RHU.

104. While at Lee CI Plaintiff was on a Hunger Strike on and off, so he re-initiated the hunger strike his first day at Perry CI. This caused Plaintiff to catch immediate

flak, and eventually Plaintiff filed his first grievances about the unprofessional behavior of Officer Chad Binkley.

105. As it turns out, Plaintiff's grievances only fueled Officer Binkley's disdain for what he called "Terrorist like us". He went so far as to start using racist slurs more frequently, and this only fueled my Impulsive Explosive Disorder and Schizoaffective Disorder.

106. On 9 May 2015 while still on a hunger strike Officer Binkley openned my food flap and sat a regular tray in it; It was a Saturday so they served pancakes and though I took the tray, I didn't eat anything off of it so I could get a supervisor to my cell.

107. When Officer Binkley came to get the tray, Plaintiff told him to go get a supervisor and he would relinquish the tray. A parade of people came to Plaintiff's cell trying to get him to give up the food tray, and after Plaintiff addressed his issues about being told he was told that he was going directly to General Population, he handed over the tray with all of the food still on it.

108. Plaintiff was then told by Officer Binkley that he had to go on "Control Cell", and he was going to teach Plaintiff a lesson about "f'ing with him". Plaintiff thought he was joking, but sure enough a parade of people were paraded to Plaintiff's door trying to convince him to "willing" go on control cell.

109. During this time Officer Binkley was told to get away from Plaintiff's cell door because he kept saying that "They were going to take my clothes one way or another". Plaintiff didn't respond well to this and eventually they saw that Plaintiff would not willingly go on control cell for a failure to obey a direct order offense which is a MINOR offense that likely warrants "counseling" as a punishment.

110. Officer Binkley and his cohorts saw this as a way to try to BREAK someone from the notorious Lee CI's Chesterfield Unit, and they eventually sprayed so much MK-9 into the small cell that Plaintiff passed out. Plaintiff came back to consciousness being drug down a hallway. Plaintiff was allowed to gather himself, and then was led to Medical to see a nurse that cared very little that Plaintiff who has a eye disease called sarcoidosis was sprayed with a large quantity of mace.

111. Plaintiff was still in pain from his 13 April 2015 wrestling match, and this incident only re-instigated those injuries. Plaintiff utelized the sickcall system at both Lee CI and Perry CI, but from the outset Nurse Practitioner Amy Enloe and Nurse Lindsey Harris made it clear that they would not provide me with any help for my ailments.

112. Plaintiff filed sickcall requests, grievances and ultimately a complaint with the SC Department Of Labor, Licensing And Regulation....... Though none of it made any difference.

113. Plaintiff's disorders progressively made him lose all desire to do things "The Right Way" because as the record will reflect, he filed an exorbitant amount of RTSM's and grievances about his medical issues and the psychological torture he had to endure on a day to day basis dealing with staff who looked for any reason to give them justification to do a Use Of Force ........ And during this time Plaintiff was searching for someone to sell him some weapons so if he was unjustly attacked again he would be able to defend himself to some degree.

114. Plaintiff continued to write grievances and RTSM's throughout this rough, dark time, and looking back on those Exhibits now, Plaintiff only received more and more asinine responses that worsened his state of mind.

115. Everything seemed bleak and when Officer Randall Fowler Jr. starting coming on the small wing (only six cells) acting like a homosexual (tying up his shirt, talking like a woman, making lewd remarks, etc.) to other people on the wing, Plaintiff found a level of humor in it.

116. That humor quickly faded though when Officer Fowler started directing that conduct at Plaintiff, and to this day...... Plaintiff faults himself for openning up the dialogue with him by cursing him out and playing with him as the others were doing.

117. A line had to be drawn when Officer Fowler started walking Plaintiff up to make kissing faces or lewd comments, so Plaintiff told Officer Fowler that he wasn't going to play with him like that anymore and that if he didn't stop, Plaintiff would notify his superiors.

118. This didn't fase Officer Fowler, and even when Plaintiff told his direct supervisors (Lt. Blackburn and Sgt. Bilyeu) about Officer Fowler's conduct from start to finish......., Officer Fowler continued to taunt Plaintiff with his homosexual behavior; I guess he was trying to get up under my skin for cursing him out in the past.

119. Once Plaintiff saw that Lt. Blackburn or Sgt. Bilyeu would stop Officer Fowler and his conduct, Plaintiff wrote RTSM'S to Captain Wantonta Golden, Lt. Blackburn, and Sgt. Bilyeu officially letting it be known what Officer Fowler was doing and I wanted it to stop.

120. I handdelivered Captain Golden's RTSM and a few days after giving it to her, she told me that she had made Captain Lasley aware of the matter for Him to handle because all three officers were on his shift.

121. Plaintiff sent those RTSM's out on 6 June 2015, and turned around and wrote the Inmate Grievance Branch about it on 12 June 2015. Officer Fowler had stopped his homosexual games, but if Plaintiff knew what was to come... .... He would honestly had rather dealt with Officer Fowler's little verbal games.

122. On 19 June 2015 first shift was late passing out dinner so, night shift had to come around and pick the trays up. Plaintiff no longer received hard trays because he broke one, slung it out of his food flap and put feces on another one and through out of his food flap. Captain Duffie charged and sanctioned Plaintiff for those offenses on 17 May 2015 and placed him on 90 DAY SOFT TRAY RESTRICTION (Meaning Plaintiff was only given plastic/ styrofoam trays that didn't have to be collected).

123. Some trays came up missing while Sgt. Bilyeu and Lt. Blackburn were taking up the trays, and when Lt. Blackburn came to my cell and asked me if I had

any regular trays, I told him that he already knew I was on soft tray restriction so why was he asking me.

124. They eventually started searching a few cells on other wings, and when Lt. Blackburn appeared at my cell and said he needed to search my cell, I told him for what when they were looking for hard trays and I did not receive hard trays. He said that didn't matter and that he could search my cell whenever he wanted, and I refused.

125. When Captain Lasley appeared and starting asking me about the Assault and Battery With Intent To Kill charges that I had for incidents at Lieber CI back in December 2005 and April 2008 ....... I knew that something was up and I immediately started asking him about Officer Fowler sexually harassing me.

126. He wouldn't comment (only smirked), and they went through the whole fake parade of people trying to convince me to just agree to the search. The search was initially prompted to search for missing trays (which I did not receive at my meals), so obviously Captain Lasley, Lt. Blackburn, Sgt. Bilyeu and right on down to Officer Fowler (all caucasian, white men) saw an oppurtunity to nit pick at me for filing the sexual harrassment charges against Officer Fowler. Again......, If I knew what would follow was going to happen, I would have agreed to let them search the cell.

127. Even though Plaintiff KNEW that he'd get sprayed with a large quantity of mace and get into a physical altercation with officers ......., Some bad part of Plaintiff wanted to hurt them just a little because it was so obvious they were nitpicking, and Plaintiff was fed up.

128. When the camera appeared Plaintiff repeatedly let it be known that all of this was retaliation for him filing sexual harrassment charges, but that didn't stop them from spraying almost 300 grams of MK-9 into that small cell then coming in there and doing their pressure points on Plaintiff.

129. Plaintiff is no stranger to physical contact with multiple officers so when he was having various pressure points applied to his body, having people's elbows in the back of his neck, somebody twisting one of his toes, even someone grabbing his genital area ....... All of that was normal.

130. But when Plaintiff was laying on his stomach with four to five big men with various parts of their bodies on top of his body .... Doing all types of things to get Plaintiff's right hand behind his back with his left hand... When I came to the realization that one of those sadistic RIOT men was running his hand ov the end of some handcuffs between the crease of my butt-cheeks, pushing until they probed my ~~anus~~ anus ..... Realizing that while all of those other body parts were all over me made me IMMEDIATELY STOP RESISTING.

131. While my hand was going behind my back I thought to myself ....... What the "f***" just happened, and before I could think anything else the bastard did it again........ Slowly taking something (The ends of his fingers

or the end of some handcuffs) and running it up the crease of my butt-cheeks and when they got to the bottom pushing harder in order to probe my anus.

132. Having to describe what they did in this Complaint is tough because admitting to others that a group of officers held you down and started messing with your butt to make you stop resisting is the most embarrassing things... ... Especially for someone like me who is known for assaulting officers.

133. A part of me died that day because when they were leading me out of that cell BLIND BECAUSE OF ALL THE MACE THEY SPRAYED........ All I could think is chill, live to fight another day, get some weapons and then try to kill all of them.

134. One of my Sexual Assault Therapist said that me giving and not fighting once I realized what was happened is a normal reaction. I constantly battle that position though because a part of me says I should have resisted even more.

135. When they took me to Medical I remember hearing myself talking calmly to them, while I was thinking of killing them as soon as I got some weapons. It was worse because from the time they entered my cell until they brought me back from Medical, I had mace in my eyes and couldn't see anything. It put me back in 2007 when my sarcoidosis first appeared and I had to get around not being able to see anything....... Only this time I'd been sexually assaulted and all I could think to do is do whatever was necessary to make them think that they'd BROKEN ME.

136. Once in the maced cell alone again, I had a serious tug of war with myself.... One side saying if you bring it to someone attention then I wouldn't be able to kill them and get away with it because I'd be a prime suspect.... And the other side... The side that won.... Telling me to expose what they did to me because those sick bastards were probably doing it to others and they were just like me..... Initially to ashamed and embarrassed to say that "Men overpowered me and in order to make me stop resisting one of them probed my butt-cheeks and anus. For a heterosexual man who's known as an alfa-male......... That is VERY, VERY hard to do.

137. Having to go to the hospital and undergo a rap test kite was dehumanizing in an entirely different way, and looking back on that time I see that my hate for those rogue staff members consumed me.

138. Once the nightmares of being RAPED started I knew I needed serious help because staff at McCormick CI, Broad River CI, Palmetto Hospital, Kirkland CI and Lee CI will all attest that I no longer cared about living. Receiving Sexual Assault Therapy/Counseling was a uphill battle though, and most of the defendants were named because they knowingly and intelligently participated in a sadistic campaign to deny me the said therapy. ONLY through depositions and testimony at trial will each defendant involved be able to attempt to convince someone that they were not involved because my interactions with them and my extensive RTSM and Grievance file prove that 90% of the defendants in this case were involved

in keeping Plaintiff from receiving sexual assault therapy SOLELY to try to help cover up what those bastards at Perry CI did to me to get me to stop resisting.

139. Denying me sexual assault therapy is sadistic and malicious in a way, and coupled with the fact that a campaign is being waged to deny Plaintiff occupational hand therapy and access to a neurologist ....... AN ELEMENTARY investigation into the incidents already stated and the incident that happened on 25 May 2016 will CONCLU-SIVELY show that the 77 Defendants named in this case could easily be double that. The thing is ...... Up until this point no one has conducted an elementary investigation.

140. Between the date Plaintiff was assaulted and his anus probed up until 25 May 2016 Plaintiff got into an exorbitant amount of incidents with staff, some documented and alot of them "Water Under The Bridged" with no paperwork done. When depositions and eventually testimony at trial come, we will see who will throw who under the bus, lie and or admit what they did and why.

141. As to the 25 May 2016 incident, Plaintiff was going through a crisis, requesting to speak to his mental health counselor because his medication had made him pass blood in his urine and had his right side hurting, but instead of Major James Parrish getting one of the said counselor, he got mad at Plaintiff because he had emptied one cannister of MK-9 but because Plaintiff had his food flap jammed effectively ..... Alot of the mace did not get into his cell. So instead of doing like Judge Michael Baxley's 8 January 2014 Order told him to do and go and get a mental health counselor to try to defuse the situation ........ This sick bastard went and got ANOTHER large cannister of MK-9 mace and some type of shield with a rod and hook attached to it.

142. The said hook ended up ripping Plaintiff's right hand VERY VERY BADLY, severing tendons, nerves, etc., and afterwards before Plaintiff was transferred to the hospital (where he stayed for three days) ....... Major Parrish told him that he didn't mean to cut my hand open like that, he was just trying to get some of that mace into the cell. Policies and laws protect Plaintiff from such sadistic and malicious behavior, and Major Parrish's behavior that day is one of many instances where it can be proven that SCDC's Mental Health Program is still disfunctional and broken.

143. Major Parrish thought he was saying something nice by saying he didn't mean to rip my hand open, he was only trying to get some mace on me because he'd failed with his first cannister ....... Not knowing that trying to get more mace into a mental health resident's cell ON RHU (BEHIND A LOCKED DOOR) instead of going to get a Mental Health Counsel is outright sadistic and malicious in nature.

144. As mentioned earlier, to date not only is Plaintiff being sadisticly denied sexual assault therapy, since the injury to his hand he has sadisticly been denied occupational hand therapy or access to a neurologist. Dr. John Walsh specificly told Plaintiff that occupational hand therapy was OBLIGATORY if he wanted a good outcome with his hand, and SCDC's disdain for Plaintiff runs so deep that they have a long line of doctors on their payrole putting in Plaintiff's Medical records that he is "non-compliant" with self-therapy ....... Which even though my hand is killing me right now is down right laughable, I do "self-therapy" every day, all day and those doctors only {265} tried to muddle my records because I re-

-quested occupational hand therapy, Dr. John Walsh and I cursed them out when they said I wouldn't receive any of that.

145. Plaintiff wish that he had retained an attorney to type out this Complaint and have it in proper order, but he prays that just like back in 2001 with Judge Kosko........ The "screener" of this Complaint will see through the sloppy hand writing, recognize that just like out in California with that cop getting caught....... This is a case that involves some sick, dehumanizing, sadistic, evil and malicious actions committed by officers acting under color of state law and with their badges on, and appoint counsel.

146. The "Screeners" of this complaint already have an enormous amount of reading to do though, so for now Plaintiff will close out this Complaint. A number of the Defendants have pledged to TELL THE TRUTH, so Plaintiff prays that this Court appoints him an attorney so that Discovery can be conducted and this case placed on the trial docket. Plaintiff is still a little ashamed and embarrassed to tell parts of his story to the world but....... I'll do it anyways in hopes that it'll help someone else have the courage to speak out.

## V. Exhaustion Of Legal Remedies

147. Plaintiff, Robert Louis Garrett Jr., used the prisoner grievance procedure available to try and solve/remedy the issues in this Complaint. A review of the long file will show that Plaintiff went far and beyond to exhaust his remedies on this level.

148. See Exhibits 4A - 258A (Sent To Court In RLGJ 5 Vanilla Envelopes)

## VI Legal Claims

149. Plaintiff reiterates, realleges and incorporate by reference Paragraphs 1-148.

150. The excessive/unnecessary use of force, physical assaults, broken Mental Health Program, sexual assault, deliberate indifference to Plaintiff's medical needs, unsafe conditions and sadistic/malicious cruel and unusual punishment stated herein violated Plaintiff, Robert Louis Garrett Jr.'s rights, and constituted blatant cruel and unusual punishment under the Eighth Amendment of the United States Constitution.

151. Judge Michael Baxley's 8 January 2014 forty-five page Order did little to curtail SCDC's habit of excessive use of force in place of mental health care and treatment, and RLGJ Justice requires the appointment of counsel so that the facts about SCDC's broken Mental Health Program can come to light and maybe a Federal Court can force it to do what Judge Baxley attempted to make it do.

152. The Plaintiff has no plain, adequate or complete remedy at law to redress

the horrific wrongs described herein. Plaintiff has been and will continue to be irreparably injured by the conduct of the defendants unless this Court grants Declaratory and injunctive relief which Plaintiff seeks.

## VII. Prayer For Relief

Wherefore, Plaintiff respectfully prays that this Court enter judgement against the Defendants granting Plaintiff the following:

153. A Declaration from Defendants that the acts and omissions described herein violated Plaintiff's rights under the Constitution and laws of the Unites States of America.

154. The attached Motion For Appointment Of Counsel be granted, and a Scheduling Order be issued for all parties to adhere to.

155. The attached Order To Show Cause For A Preliminary Injunction And Temporary Restraining Order be granted with specific instructions on how the Defendants are to proceed, sanctions if those instructions are violated, etc.,

156. Permanent Injunctions be issued by this Court that this Court deems just, proper and equitable.

157. Compensatory damages in the amount of $77,000.00 against each defendant, jointly and severally.

158. Punitive damages in the amount of $77,000.00 against each Defendant, jointly and severally.

159. A jury trial on all issues triable by jury.

160. Plaintiff's costs in this suit.

161. Any additional relief that this Court deems just, fair, proper and equitable.

Respectfully Submitted,

RLGJ

Robert L. Garrett Jr.
Robert L. Garrett Jr.
Allendale Corr. Inst.

7 May 2018

## Brief Description Of How Defendants Are Involved

HIS CELL. Major Parrish told Plaintiff this before Plaintiff was taken to the hospital. He actually said he didn't mean to rip my hand open as he did, he just wanted to clear my food flap that I had effectively jammed as a form of protest to get an audience with my Mental Health Counselor.

6. The main instances in this action is the sadistic physical and sexual assault on 20 June 2015 that was prompted because Plaintiff exposed some sexual harrassment that was going on with Officer Fowler....... And the attack on 25 May 2016 by Major Parrish resulting in Plaintiff's hand getting ripped open VERY BADLY (Requiring repair of tendons, nerves, etc., and leaving Plaintiff with a LIFELONG DISABILITY).

7. Because of those two serious instances of sadistic/malicious official misconduct, a large number of SCDC Staff and Medical Personnel participated (and are still to this day participating) in denying Plaintiff meaningful, proper and adequate medical care. Dr. John Walsh told Plaintiff that occupational hand therapy was OBLIGATORY in order to have a "good outcome", and all of the herein referenced Doctors sadisticly did SCDC's dirty work by denying Plaintiff the said treatment, and then lying and saying that "Plaintiff is/was non-compliant with SELF-THERAPY". Plaintiff's hand now spasms, cramps and causes him serious PAIN DAILY, and though he has repeatedly brought this to the attention of nurses, doctors, SCDC Staff and Administrators....... Some universal memorandum must have been passed down to deny Plaintiff the said therapy and access to a neurologist.

8. A large number of SCDC Staff and Medical Personnel are likewise participating in denying Plaintiff meaningful sexual assault therapy. Plaintiff already had various mental health issues BEFORE the sexual assault and him getting his hand ripped open, but now he is plagued with VERY GRAPHIC, SICK NIGHTMARES of being raped, and from a heterosexual man point of view...... There is no worse dream to have. Plaintiff has repeatedly advised the herein reference Medical Personnel, Mental Health Counselors, Doctors and Psychiatrist that the nightmare medication is INEFFECTIVE but still he is being denied sexual assault counseling and therapy. Coupled with the fact that he is being sadisticly denied proper/adequate treatment for his seriously damaged hand....... It becomes CLEAR that a consensus was reached to deny both forms of therapy in order to cause me additional irreparable harm, and cause me to kill myself and/or others.

9. Plaintiff has been subjected to all of this CRUEL, SADISTIC AND UNUSUAL PUNISHMENT because SCDC's Mental Health Program is severly broken, and though Judge Michael Baxley's 8 January 2014 forty-five page Order made them put some bandaids on something that requires MAJOR RECONSTRUCTIVE SURGERY....... It is evident that it is still subjecting it's Mental Health Residents to a substantial risk of serious and irreparable harm (both physically and mentally).

10. Some of the named Defendants will tell the truth during depositions and at trial, so at this point......., Plaintiff prays that he has adequately outlined how each of the Defendants have played and are playing a part in the VIOLATION OF HIS EIGHTH AMENDMENT RIGHT TO BE FREE FROM BEING SUBJECTED TO CRUEL, SADISTIC, MALICIOUS AND UNUSUAL PUNISHMENT.

7 May 2018

*Robert L. Garrett Jr.*
Robert L. Garrett Jr.

# Brief Description Of How Defendants Are Involved

1. Plaintiff was forced to go on "Hunger Strike" to get to talk to Medical Personnel, Upper Echelon Officials, and sometimes because he feared for his life and refused to eat because officer insinuated that they would put something in his food. He went on multiple hunger strikes at Lee CI, Perry CI, McCormick CI, Broad River CI, and Allendale CI. The longest one was after he was sexually assaulted at Perry CI in June 2015 (He stay on one for almost twenty days; Medical records, once compelled in Discovery will reflect these strikes).

2. Director Barkley, Director Bryan P. Stirling, Deputy Director McKie, Deputy Director Lefford Fate, Deputy Director S. Soltis, Dr. B. Lewis, Dr. A. Compton, Dr. Bryue, Mental Health Director Kenward Dubose, Dr. Koon, Dr. Arrojas, Dr. T. Ergen, Dr. Kocher, Dr. Sridaran, Warden Cecilia Reynolds, Warden Larry Cartledge, Warden Leroy Cartledge, PREA Compliance Manager James Parker, June 2015 PREA Compliance Manager, Chief Ann Hallman, IGC C. Hindenburg, IGC K. Rivers, IGC P. Talbert, IGC Barns, Major Curtis Earley, Associate Warden Florence Mauney, Nurse Practitioner Amy Enloe, Registered Nurse Lindsey Harris, Mental Health Counselor Meagan Harris, Registered Nurse Katherine Burgess, Unit Manager Rogers, Associate Warden Stephon, Registered Nurse Gina Williamson, Associate Warden Washington, Registered Nurse Olds, Nurse Administrator Pamela Derrick, Mental Health Counselor Myecha L. Miley, Mental Health Counselor Brown, PREA Compliance Manager Sharp, Mental Health Counselor Michelle Fox, Dr. Beverly Wood, PREA Compliance Manager V. Grubbs, Major Larry Morris, Associate Warden M. Newton, Warden John Pate, Deputy Director Michael McCall, Dr. Cassandra Means, Mental Health Counselor Ashley Maddox, Associate Warden Wilkens-Smith, Unit Manager McCoulough, Associate Warden Willie Davis, SCDC Administrator Katora Gause and Major Bernadette Jefferson all actively, knowingly and intelligently participated in a Retaliation/Reprisal Campaign against Plaintiff; They PURPOSELY and sadisticly denied Plaintiff occupational hand therapy, access to a neurologist for the ongoing cramping, spasming and pain in Plaintiff's right hand, and moreso...... Some of them have sadisticly led a campaign to continue to deny Plaintiff sexual assault therapy (Like he was receiving from the Sexual Trauma Center of the Midlands via Mrs. Hopkins). Only through depositions and trial testimony will we know exactly why each of them played a role in the said campaign (If they were tricked, coerced, intimidated, etc.).

3. Franklin Richardson, Unit Manager Rogers and Sgt. McBride participated in the use of force on Plaintiff on 13 April 2015, and moreso the use of force on Plaintiff in Medical in June 2016 after surgery on his hand. Those three and others led a group of other officers to attack Plaintiff and physically get him to RHU.

4. Randall Fowler Jr., Capt. Captain Lasley, Captain Williams, Captain DeGeorgis, Captain Wantonta Golden, Sgt. Jeff Bilyeu, Lt. Blackburn, Sgt. Kenneth Myers, Off. James Jennings, and Off. Nathan Rice either participated in the physical/sexual assault on 20 June 2015 and/or conspired to cover up Off. Fowler's sexual harrassment of Plaintiff weeks before the said assault. Plaintiff honestly believes that the majority of them conspired to "Teach Plaintiff A Lesson", try to break, etc. Plaintiff by conducting the unnecessary use of force and ultimately the physical and sexual assault.

5. Lt. Aull, Lt. Beckett Jr., Sgt. T. Esterline, and Major James Parrish all used mace and/or MK-9 on Plaintiff during Jan. 2016 - May 2016; It happened a number of times (between five to ten times), ending when Major Parrish sadisticly ripped Plaintiff's hand open on 25 May 2016 with the hook contraption... Keeping in mind his reason for using the hook device was to clear Plaintiff food flap so he could GET MORE MACE ON PLAINTIFF AND INTO